UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CHARLES L. SCHOOLER.

    Plaintiff,

v.

CAROLYN W. COLVIN
COMMISSIONER OF SOCIAL
SECURITY

    Defendant.

Action No. 5:13-CV-126-JMH

**MEMORANDUM OPINION AND ORDER**

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on cross motions for summary judgment [DE 9 and 10][1] on Plaintiff's appeal of the Commissioner's denial of his application for Supplemental Security Income. This matter is ripe for review. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

**I.   Factual and Procedural Background**

Plaintiff Charles L. Schooler filed an application for Supplemental Security Income (SSI) on May 17, 2007, alleging disability as of November 24, 2005 (Tr. 114-17, 139). After the agency denied Schooler's claims at the initial and reconsideration levels (Tr. 73-79), the ALJ held a hearing on April 1, 2009 (Tr. 23-46). On June 2, 2009, the ALJ issued a hearing decision denying Schooler's claim (Tr. 12-22). On May 25, 2010, the Appeals Council (Council) denied Schooler's Request for Review (Tr. 1-4). Schooler then appealed to this Court. On January 19, 2011, this Court remanded Schooler's claim (Tr. 352-53), and on February 17, 2011, the Council remanded the claim, in relevant part, so that the ALJ could properly consider the standard articulated in Listing 12.05C for mental retardation. (Tr. 240, 357—60).

On March 22, 2012, the ALJ issued a remand hearing decision denying Schooler's claim (Tr. 237-52). On March 20, 2013, the Council denied Schooler's Request for Review (Tr. 226-29), making the ALJ's decision on remand the final decision of the Commissioner pursuant to 20 C.F.R. § 416.1481. Schooler now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The facts underlying Plaintiff Charles L. Schooler's claim are largely undisputed. Schooler, born in 1972, was 39 years old at the time of his most recent administrative hearing. (Tr. 114.) He alleges disability beginning on November 24, 2005. (TR. 114). Schooler took special education classes before leaving school in the tenth grade. (Tr. 30—31). However, he obtained his GED. (Tr. 30). He has had no vocational training. (Tr. 30). He had been employed as a carpenter's helper for two years beginning in 2004.[2] (TR. 32—33). His duties included cleanup and assisting with tasks, such as holding pieces of drywall. (Tr. 33). He reported that he was terminated because "I didn't know enough for [Schooler's employer] to keep me." (Tr. 33). Schooler alleges that he has been unable to return to work as a result of the combination of impairments causing him to be disabled, including mental retardation, major depressive disorder, impaired eyesight, and impaired hearing. (Tr. 141).

**II. OVERVIEW OF THE ALJ HEARING**

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual

---

[2] Schooler was incarcerated from 1992 to 2004. (TR 30).

> is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.
>
> 4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled, if so, proceed to step 5.
>
> 5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### III. ALJ's findings

Following remand by this Court, Schooler testified before ALJ Kayser, which was held on March 1, 2012. (Tr.

4

240-52). ALJ Kayser issued a decision dated March 22, 2012, denying Schooler's claim for benefits. (Tr. 237-52).

The ALJ applied the five-step sequential evaluation process found at 20 C.F.R. § 416.920(a)(4) (2013). The ALJ found Schooler has the following "severe" impairments pursuant to 20 C.F.R. § 416.920(c): affective mood disorder, mild mental retardation,/borderline intellectual functioning, hearing loss, and decreased vision (Tr. 242, Finding No. 2). The ALJ found Schooler did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 243, Finding No. 3).

The ALJ determined Schooler's residual functional capacity (RFC) and found Schooler could perform work at all exertional levels reduced by several nonexertional limitations (Tr. 247, Finding No. 4); See 20 C.F.R. § 416.920(a)(4)(iv). The ALJ then found Schooler had no past relevant work. (Tr. 251, Finding No. 5). At step five of the sequential evaluation, 20 C.F.R. § 416.920(a)(4)(v), the ALJ used Medical-Vocational rule 204.00, 20 C.F.R. pt. 404, subpt. P, app. 2, rule 204.00, as a framework for decision-making, in conjunction with a Vocational Expert's (VE) testimony (Tr. 299—301), to find Schooler could

perform other work that existed in the national economy (Tr. 251—52, Findings 6-9). Thus, the ALJ found Schooler is not disabled. (Tr. 252, Finding No. 10).

Schooler filed a Request for Review on April 20, 2012. (Tr. 231). The Appeals Council denied the Schooler's Request for Review on March 20, 2013. (Tr. 226—28). The instant appeal followed.

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**IV. Analysis**

Schooler's only argument on appeal is that the ALJ erred in Step 3 of his review by finding that Schooler was not disabled under 12.05C of Appendix I to Subpart P of 20 C.F.R. § 404. "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, No. 13-5841, 2014 WL 223655, at *6 (6th Cir. Jan. 21, 2014) (citations omitted). Section 12.05 regarding mental retardation[3] provides as follows:

> [Mental retardation] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> . . .

---

[3] "Intellectual disability" has replaced the term "mental retardation." in Listing 12.05. 20 C.F.R. § 404, subpart P, appendix 1, 12.05. Because the parties and the record refer to "mental retardation," this Court will continue to use that term herein.

7

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § 404, subpart P, appendix 1, 12.05C.

The ALJ concluded, and the parties agree, that Schooler's scores on standardized IQ tests met the first part of Listing 12.05C. [Tr. 246]. Testing in July 2007 by Jennifer L. Wilkes-Deaton, M.A., and Cristi M. Hundley, Ph.D., revealed that Schooler had a full scale IQ score of 67, a verbal IQ score of 67, a performance IQ score of 73 and a diagnosis of mild mental retardation. [Tr. 182]. The ALJ also found that the Schooler had "severe impairments" in his second finding. [Tr. 242, Finding No. 2]. Therefore, Schooler also met the second requirement of 12.05C by showing a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C.

However, the ALJ found that Schooler was not disabled under the 12.05C factors because "the claimant's level of adaptive functioning exceeds the level of cognitive functioning suggested by his IQ scores." [Tr. 246]. "Adaptive functioning is different from intellectual functioning," and Schooler must demonstrate that "he had

8

adaptive functioning deficits during his developmental period" to qualify under 12.05C. *Peterson*, 2014 WL 223655, at *7. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). "While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period . . . a claimant is by no means *required* to produce an IQ score obtained prior to age 22." *West*, 240 F. App'x at 698 (citations omitted).

The ALJ's conclusion that Schooler did not exhibit the required deficits in adaptive functioning to qualify as disabled under the 12.05C listing is supported by substantial evidence in the record. In finding that Schooler exhibited a higher level of adaptive functioning, the ALJ noted that the Schooler was able to communicate normally and relay information as directed, such as his social security number, date of birth, address and other information. Additionally, Schooler reported reading the Bible, which would suggest higher adaptive functioning.

The ALJ relied on testimony of Medical Expert (ME) Doug McKeown, Ph.D., that Schooler functioned at a level

9

higher than mild mental retardation (Tr. 246, 249-50, 287-298). The ALJ relied on Dr. McKeown's testimony that Schooler's ability to complete his GED and pass his written driver's test, as well as his ability to read parts of the Bible, showed that Schooler had the functional reading comprehension of a fifth-grade student, which is more consistent with borderline intellectual functioning than mild mental retardation. (Tr. 289-92). Although Schooler testified that he only read the Bible and did not read newspapers (Tr. 272), his mother reported that he did read the paper (Tr. 148). Dr. McKeown also testified that the information contained in both psychological consultative exams (CE) regarding Schooler's general knowledge and adaptive living skills (Tr. 178-84, 474-81) are inconsistent with mental retardation. (Tr. 291).

Schooler contests the ALJ's determination that he did not meet the 12.05C listing, arguing that his verbal and full scale IQ is 67 and that he suffers from physical and other mental impairments imposing additional significant work-related limitation of function. The ALJ agreed that Schooler meets these criteria under the 12.05C listing. Schooler points to his testimony that he didn't "earn" his GED, but that it was given to him after five attempts because he had "worked so hard to try to get it." (Tr.

284–85). As to the ALJ's finding that Schooler demonstrated higher adaptive functioning, Schooler argues that his placement in special education classes demonstrates deficits in adaptive functioning during the developmental period.

However, placement in special education classes alone is not sufficient to demonstrate an adaptive functioning deficit prior to age 22. See *Justice v. Comm'r Soc. Sec. Admin.*, No. 12-3150, 2013 WL 645957 (6th Cir. 2013) (substantial evidence supported ALJ's decision that plaintiff failed to meet the "adaptive functioning" requirement of Listing 12.05C where the plaintiff was enrolled in special education classes, but where plaintiff dropped out after the ninth or tenth grade and had basic reading and mathematical proficiency). "Neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two. *Peterson*, 2014 WL 223655, at *7; see also *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (finding that an eighth grade education with a history of special education classes did not establish adaptive functioning deficits prior to twenty-two years of age); *Foster*, 279

F.3d at 352—55 (finding that a ninth-grade education completed while enrolled in special education classes, followed by numerous attempts at a GED and an adult full scale IQ of 69 did not establish adaptive functioning deficits prior to age twenty-two.)

Although it appears that Schooler was enrolled in special education classes at times [TR. 225, 288, 151, 180], there is evidence that his education suffered from other factors as well. The ALJ noted it is likely that Schooler's level of absenteeism from school, not just his level of intellectual functioning, played a significant role in his ability to learn (Tr. 250, 225). Moreover, Schooler told examining psychologist Dr. Marc Plavin that he quit high school not due to reduced intellectual functioning, but after the school suspended him twice for repeatedly fighting (Tr. 477). The ALJ also relied on Schooler's reports to Dr. Plavin that his inability to work is due, in part, to his criminal record. (Tr. 250, 474-75).

Dr. McKeown concluded that Schooler functioned at a higher level than mental retardation. (Tr. 292). Dr. McKeown also noted there is no evidence showing Schooler had an IQ below 70 prior to age 22. (Tr. 289). See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (Mental

retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22."). The ALJ properly assigned great weight to Dr. McKeown's opinion that Schooler did not meet Listing 12.05C and Dr. McKeown's opinion is substantial evidence supporting the ALJ's decision. (Tr. 247). Medical experts' opinions may be entitled to great weight if supported by the evidence. *See Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1308-10 (6th Cir. 1990) (ALJ properly relied on opinion of medical expert).

This reviewing court "defers to the ALJ's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012) (quoting *Foster*, 279 F.3d at 353). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). This Court finds that there is sufficient evidence in the record to support the ALJ's conclusion that

Schooler's adaptive functioning exceeded the level of cognitive functioning suggested by his IQ scores and, therefore, that Schooler was not disabled under Listing 12.05C.

The decision of the Commissioner will be affirmed and a separate judgment entered.

Accordingly, **IT IS ORDERED**:

(1) that the Plaintiff's Motion for Summary Judgment [DE 9] is **DENIED**; and

(2) that the Defendant's Motion for Summary Judgment [DE 10] is **GRANTED**.

This the 8th day of May, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge